351 So.2d 1290 (1977)
ETHYL CORPORATION
v.
COLLECTOR OF REVENUE.
No. 11543.
Court of Appeal of Louisiana, First Circuit.
October 17, 1977.
Rehearing Denied November 21, 1977.
Writ Refused January 11, 1978.
*1291 Terry D. Hubbs, Baton Rouge, of counsel for plaintiff appellee, Ethyl Corp.
Robert R. Rainer, David L. Dawson, Jr., Allen J. Bergeron, Jr., Baton Rouge, of counsel for defendant appellant, Collector of Revenue.
Before LOTTINGER, EDWARDS and PONDER, JJ.
LOTTINGER, Judge.
This case presents only a question of law, namely, the construction and/or interpretation to be given to LSA-R.S. 47:7, as amended by Act 12, 1973 Extraordinary Session.
The facts are not in dispute. Ethyl Corporation (Ethyl) owns and operates a plant in East Baton Rouge Parish, Louisiana. Gulf States Utilities Company (GSU) also owns and operates a plant approximately 1,000 feet from Ethyl, which GSU plant burns natural gas in the creation of steam and in the generation of electricity, which is *1292 sold to only two customers, Ethyl and the Exxon Corporation. Contracts exist between GSU and Ethyl.
Contractually, Ethyl is required to furnish GSU natural gas, and if natural gas becomes unavailable, then merchantable fuel oil, to be used and consumed by GSU in firing its boilers in the creation of steam and the generation of electricity which are both subsequently sold to Ethyl. The essence then is that Ethyl furnishes natural gas to GSU, and in return, GSU furnishes steam and electricity to Ethyl.
Ethyl does not charge for the quantity of natural gas and/or fuel oil delivered to GSU, but if Ethyl's supply of natural gas is interrupted or curtailed, and GSU burns fuel oil from its own storage, Ethyl shall pay GSU for the substitute fuel oil. We conclude from reading the contracts that the price GSU charges Ethyl for the steam and electricity directly takes into consideration the quantity of natural gas supplied by Ethyl. Stated another way, the normal charge for the steam and electricity sold to Ethyl is reduced proportionately by the quantity of natural gas furnished.
Prior to the repeal of Act 12 of 1964, Regular Session, GSU was entitled to and claimed a tax credit under the then Natural Gas Tax Credit Statute [1]. However, Act 12 of 1972, Regular Session, redefined who was eligible for the credit and limited this credit to "a plant or establishment owned by a municipality which engages in the generation of electric power for resale; * * *." At the same time GSU was receiving this tax credit, it was also subject to the tax on sale and generation of electricity[2]. This tax, however, was repealed by Act 9, of 1973, Extraordinary Session, effective January 1, 1974. During the same legislative session, the definition of manufacturing establishment as found in LSA-R.S. 47:7 D(1) was redefined to again include a "plant or establishment" though not limiting ownership to a municipality, with the proviso that "it shall not include * * * a plant or establishment owned or operated by any person, firm or corporation that was subject to the payment of the tax on the generation or sale of electricity (R.S. 47:1061-1072)."
Thus it can be seen that during the time between the enactment of Act 12 of 1972, Regular Session, and Act 12 of 1973, Extraordinary Session, neither GSU nor Ethyl was eligible to apply for the credit for neither was a municipality. However, with the enactment of Act 12 of 1973, Extraordinary Session, though GSU was still not eligible, Ethyl became eligible because of the removal of the municipally owned requirement; GSU still being ineligible because it had been subject to the tax on sale or generation of electricity. Therefore, on October 14, 1974, Ethyl pursuant to LSA-R.S. 47:7 as amended by Act 12 of 1973, Extraordinary Session, filed an application for a tax credit for the period January 1, 1974, through September 30, 1974, in the amount of $93,738.40.
On December 6, 1974, the Collector of Revenue recognized that Ethyl was entitled to a portion, $23,366.40 of the total tax credits claimed by it and issued a tax credit warrant. It denied the balance of the request on the grounds that the natural gas for which Ethyl was claiming the credit was not in fact "used or consumed" by Ethyl, but was in fact used and consumed by GSU.
Ethyl appealed to the Board of Tax Appeals the Collector's denial of the application and the Board of Tax Appeals without written reasons upheld the decision of the Collector of Revenue. A judicial review of the Board of Tax Appeal's judgment was perfected in the Trial Court which reversed the judgment of the Board of Tax Appeals and rendered judgment in favor of Ethyl, from which judgment the Collector has perfected this appeal.
In appealing, the Collector contends that the Trial Judge erred in (1) considering the affidavits of two state legislators over the objection of the Collector; (2) in not applying LSA-R.S. 47:7 D(2)(d) which provides that gas used or consumed shall not include, *1293 "Gas, any part of which is resold by the manufacturing establishment * * *," and (3) in concluding that Ethyl "uses" natural gas in the operation of its manufacturing establishment within the state of Louisiana.

ERROR NO. 1
In his written reasons for judgment the Trial Court said:
"[T]he Court finds persuasive the testimony of two members of the legislature at the time of passage of this act, particularly that of Representative Kevin P. Reilly who was the co-sponsor of Act 12, Section 1. Mr. Reilly testified in regards to this act, that the legislature `felt that the language was sufficiently broad to include any and all industrial concerns with the State of Louisiana who purchase and use or consume natural gas, either directly or indirectly and in any matter for the operation of their manufacturing establishment in furtherance of the economy of Louisiana . . .'. He went on to state that only `out-of-state' users were intended to be deprived of this tax credit." (Emphasis by the Trial Court.)
It is apparent from the above quoted portion of the written reasons for judgment that the Trial Judge relied heavily on the testimony of Representative Reilly and his conclusions and interpretations of Act 12 of 1973, Extraordinary Session. We find the Trial Judge was in error.
In its constitutional role, it is the function of the judicial branch of government to interpret the construction to be given legislative acts, and it does not lie within the domain of the legislature or legislators to interpret their own acts. The court must perform its function of interpretation without the aid of the legislature or legislators. State v. Sissons, 292 So.2d 523 (La.1974), State Licensing Board for Contractors v. State Civil Service Commission, 240 La. 331, 123 So.2d 76 (1960).

ERRORS NOS. 2 & 3
In order for Ethyl to qualify for the tax credit as provided by LSA-R.S. 47:7, it is necessary that it meet the criteria established by the legislature for the granting of this tax credit. Therefore, in interpreting this statute it is necessary that we recognize that statutes imposing taxes are liberally construed in favor of the taxpayer, Chicago Bridge & Iron Co. v. Cocreham, 317 So.2d 605 (La.1975), whereas exemptions from taxation are to be strictly construed against the person claiming the exemption, and any plausible doubt is fatal, Mattingly v. Vial, 193 La. 1, 190 So. 313 (1939), and that an exemption being an exceptional privilege, it must be clearly, unequivocally and affirmatively established. Meyers v. Flournoy, 209 La. 812, 25 So.2d 601 (1946).
Ethyl argues that LSA-R.S. 47:7 does not grant an exemption but rather a tax credit, and the two are not the same. It is basically argued that an exemption is an immunity from a general burden, tax or charge, whereas a credit is a recognition and partial or whole discharge of an already determined tax liability.
Irrespective of whether it is termed an exemption, deduction or credit, the taxpayer is being relieved of a tax burden, and thus, we see no distinction. Kentucky Utilities Company v. Glenn, 394 F.2d 631 (6th Cir. 1968).
Abiding by and applying these rules of construction, we now proceed to errors numbers 2 and 3.
In order for Ethyl to qualify for the tax credit for the use or consumption of gas in Louisiana, it cannot resell the gas. LSA-R.S. 47:7 D(2)(d)[3].
*1294 Ethyl argues that it does not sell, trade or barter the gas to GSU, however, we are convinced that the price of steam supplied to Ethyl by GSU is directly related to the furnishing of gas by Ethyl to GSU.
In Collector of Revenue v. Gulf States Utilities Co., 289 So.2d 367 (La.App. 1st Cir. 1974), writs refused, 293 So.2d 169, 170 (1974), this court used the analogy of a tailor, who in producing a product, uses the raw materials provided by the customer. Had the material not been supplied by the customer, the finished product would have had a higher price. Under the facts of this case, the transfer of gas by Ethyl is in essence a resale of gas, the consideration being the lowering of the price paid for the steam which is solely produced by Gulf States Utilities. Under these facts the Trial Court erred in failing to find that Ethyl "resold" the gas.
Though we have already found error under specification of error number 2 sufficient to cause a reversal of the Trial Court judgment, we shall proceed, nevertheless, with a discussion of error number 3.
Again applying the above rules of construction and interpretation of taxing statutes as well as those statutes that grant deductions, exemptions and credits, we must conclude that construing LSA-R.S. 47:7 strictly against the taxpayer, Ethyl does not use or consume natural gas in the operation of its manufacturing establishment as required by LSA-R.S. 47:7 A. Ethyl uses steam to manufacture its product, not natural gas. The natural gas that it claims it uses is used to produce the steam, but this natural gas is used by GSU, and not Ethyl. Therefore, we find that the Trial Judge was in error in liberally construing the tax credit statute in favor of the taxpayer.
Therefore, for the above and foregoing reasons the judgment of the Trial Court is reversed and judgment is now rendered in favor of the Collector of Revenue for the State of Louisiana, and against the Ethyl Corporation, with all costs to be paid by the Ethyl Corporation.
REVERSED AND RENDERED.
NOTES
[1] LSA-R.S. 47:7.
[2] LSA-R.S. 47:1061-72.
[3] LSA-R.S. 47:7 D(2)(d) provides:

"As used in this Section:
* * * * * *
"(2) `Gas used or consumed' shall include all natural or casinghead gas used in the operation of the manufacturing establishment for whatever purposes, but shall not include the following:
* * * * * *
"(d) Gas, any part of which is resold by the manufacturing establishment, except as to that part and quantity of the gas which is actually used by the establishment and not resold."