SCHOTT, Judge.
This is a dispute over the proper method of computing corporation franchise tax due by a holding corporation owning a subsidiary bank as defined in LSA R.S. 47:602 B. The State through its Secretary of Revenue and Taxation rejected the method of computation adopted by First Commerce Corporation (FCC) and the trial court approved the state’s position. From that judgment FCC has appealed. The issue is whether FCC properly included short-term liabilities in borrowed capital in computing the deduction allowed by R.S. 47:602 B from the taxable base provided by R.S. 47:602 A.
The first step in the computation of the franchise tax is governed by R.S. 47:602 A which provides as follows:
“Every corporation taxed under this chapter shall determine the amount of its issued and outstanding capital stock, surplus, undivided profits and borrowed capital as the basis for computing the franchise tax levied under this chapter and determining the extent of the use of its franchise in this state.”
Since FCC is a holding corporation it was entitled to take from its tax base arrived at in Step 1 the deduction provided for by R.S. 47:602 B as follows:
“Any corporation having as a subsidiary a banking corporation as defined below shall be entitled to deduct from its capital stock, surplus, undivided profits and borrowed capital, as defined in this chapter, its investments in and advances to such subsidiary banking corporation to the extent that such investments and advances exceed the difference between the total assets and the capital stock, surplus, undivided profits and borrowed capital of the holding corporation .. ”
Both sides agree that short term liabilities are properly excluded from “borrowed capital” for the purpose of computing the franchise tax base under R.S. 47:602 A based upon the following definition of borrowed capital provided by R.S. 47:603:
“As used in this Chapter, ‘borrowed capital’ means all indebtedness of a corporation, subject to the provisions of this Chapter, maturing more than one year from the date incurred, or which is not paid within one year from the date incurred regardless of maturity date .... ”
However, FCC contends that the same short term liabilities are not to be excluded from “borrowed capital” as used in R.S. 47:602 B, while the state’s position is that they should be excluded.
By way of explanation, R.S. 47:602 B provides for a deduction from the franchise tax base of a holding corporation of the amount of its investments and advances to its subsidiary banking corporation but only to the extent that these exceed the difference between the holding corporation’s total assets on the one hand and the capital stock, surplus, undivided profits, and borrowed capital on the other hand. Thus, the greater the figure for borrowed capital, the less will be the difference between total assets and the capital components of the holding corporation and the greater will be its deduction from the franchise tax base. As a result, the inclusion of short term liabilities in 602 B’s borrowed capital will *1268 reduce the holding corporation’s franchise tax liability.
We cannot reconcile FCC’s position with the plain words of R.S. 47:603 which specify that “[a]s used in this Chapter ‘borrowed capital’ means” long term obligations. The “this chapter” refers to Chapter 5 of Sub-Title II of Title 47 of the revised statutes. The definition applies to Section 602 B just as it does to Section 602 A. Any other conclusion would require a strained interpretation of R.S. 47:603.
However, FCC argues that its interpretation is supported by the wording of 602 B in that it provides for the deduction from its capital components including “borrowed capital, as defined in this chapter ” but in repeating the words “borrowed capital” among the capital components to be subtracted from total assets the statute does not repeat the qualifying words “as defined in this chapter.” Thus, FCC contends that the legislature intended to place a different meaning on “borrowed capital” the second time it is referred to in 602 B.
We are not persuaded by this argument. In the first place, it does not explain away the specific definition provided by the legislature in Section 603 for “borrowed capital” as discussed above to be applied throughout this chapter dealing with franchise tax. Secondly, it presupposes that the words “as defined in this chapter” modify only “borrowed capital” and not all of the capital components such as capital stock, the computation of which is set forth in Section 604, and surplus and undivided profits which are treated in Section 605. We are satisfied that the legislature could have repeated “as defined in this chapter” the second time but it was unnecessary and would have been redundant to do so. To agree with FCC on this point would require a strained implication from the legislature’s decision to avoid redundancy through unnecessary repetition. Thirdly, we have concluded that FCC’s interpretation would lead to an inconsistency which the legislature did not intend.
Franchise tax is in the nature of an annual license tax imposed on corporations based on capital structure for the tax year. Only borrowed capital generally committed to the corporation for at least a year is included for the purpose of computing franchise tax under Section 602 A and 603. Thus, capital which is only available by way of short term obligations is excluded in computing the franchise tax.
The practical effect of excluding short term obligations from the difference with the corporation’s total assets is to decrease the deduction, but the same rationale applies here as did to the computation of the tax base. Only relatively long term capital is taxed for franchise tax purposes and only relatively long term capital is included to enhance the deduction for investments and advances by the holding corporation to its subsidiary banking corporation. FCC’s approach would, in effect, result in a double deduction which was not the intent of the legislature.
In deciding against FCC the trial court correctly observed that statutes affording special deductions or exemptions must be strictly construed. Ethyl Corp. v. Collector of Revenue, 351 So.2d 1290 (La.App. 1st Cir.1977) writ refused, 353 So.2d 1035 (1978). We have concluded that FCC’s position could be supported only by a strained construction of R.S. 47:602 B.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.