50 So.3d 869 (2010)
Philip F. COSSICH, Jr., Individually and as a Member and Chairperson of the Plaquemines Parish Charter Commission, James F. Gasquet, III, Individually and as a Member and Vice Chairperson of the Plaquemines Parish Charter Commission, Robert L. Lobrano, et al.
v.
PLAQUEMINES PARISH GOVERNMENT, William H. Nungesser, in his Capacity as Plaquemines Parish President, Plaquemines Parish Council, Don Beshel, Keith Hinkley, Jerry Hodnett, Stuart J. Guey, Jr., Anthony Buras, Burghart Turner, John J. Friedman, Lynda G. Banta, and Marla Cooper, etc.
No. 2009-CA-1522.
Court of Appeal of Louisiana, Fourth Circuit.
October 8, 2010.
Rehearing Denied December 1, 2010.
*870 Robert L. Lobrano, Braithwaite, LA and James F. Gasquet III, Law Office of James F. Gasquet, III, Belle Chasse, LA, and Philip F. Cossich, Jr., Cossich Sumich Parsiola & Taylor, LLLC, Belle Chasse, LA, for Plaintiffs/Appellants, Philip F. Cossich, Jr., et al.
Amos J. Cormier, III, Belle Chasse, LA, and Robert A. Barnett, Guste Barnett & Schlesinger, L.L.P., New Orleans, LA, for Defendant/Appellant, Plaquemines Parish Council.
W. Eric Lundin, III, Belle Chasse, LA, for Stuart J. Guey, Jr. and Anthony Buras, Jr.
William H. "Billy" Nungesser, Plaquemines Parish President, Belle Chasse, LA, In Proper Person, Defendant/Appellee.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES, Judge JAMES F. McKAY, III, Judge TERRI F. LOVE and Judge MAX N. TOBIAS, JR.).
*871 JOAN BERNARD ARMSTRONG, Chief Judge.
The plaintiffs-appellants/appellees (hereinafter referred to collectively as the "Charter Commissioners"), Philip F. Cossich, Jr., James F. Gasquet, III, Robert L. Lobrano, Harold Asevedo, Chris Leopold, Bill Bubrig, Jerome Robinson and Brian Bubrig, individually and as members of the Plaquemines Parish Charter Commission ("Charter Commission"), appeal that portion of an August 31, 2009 judgment denying their petition for mandamus.
Certain defendants-appellees/appellants, Chairwoman Lynda G. Banta, Vice-Chairman Don M. Beshel, Councilmen Burghart H. Turner, Jerry Hodnett, John "Jay" Friedman, and Councilwoman Marla Cooper (hereinafter referred to collectively as the "Council" for ease of reference, recognizing full well that not all members of the Plaquemine Parish Council share their views) appeal another portion of the same August 31, 2009 judgment denying their petition for a Writ of Quo Warranto.

WRIT OF MANDAMUS
The Charter Commissioners initiated this action with a "Petition for Writ of Mandamus" seeking to compel the Council to submit a charter proposed by the Charter Commission to the voters of Plaquemines Parish. The petition named as defendants the Plaquemines Parish Government, William H. Nungesser, in his capacity as Plaquemines Parish President, the Plaquemines Parish Council, and Don Beshel, Keith Hinkley, Jerry Hodnett, Stuart J. Guey, Jr., Anthony Buras, Burghart Turner, John J. Friedman, Lynda Banta and Marla Cooper, each in their capacity as members of the Plaquemines Parish Council.
Certain defendants, council members Anthony Buras, Stuart Guey, Jr. and Keith Hinkley, filed an answer on July 5, 2009, in which they admitted all allegations set forth in the plaintiffs' petition and prayed that a judgment be rendered granting the plaintiffs' Petition for Mandamus. Thus, they are not included in the group referred to herein as the "Council," as they have chosen to side with the Charter Commissioners.
The Plaquemines Parish Government and its president, William H. Nungesser, each filed a similar answer on July 9, 2009.
Initially, the Council filed Exceptions of Prematurity and Lack of Procedural Capacity on July 8, 2009. They later filed an Exception of No Right and No Cause of Action on July 24, 2009. The prematurity exception was later withdrawn. On August 14, 2009, the court heard oral arguments and denied the Exceptions of No Cause and No Right of Action and ruled that they be "referred to the merits" at trial. All exceptions were denied at trial.
On August 7, 2009, the Council filed their answer and reconvened seeking a Writ of Quo Warranto, alleging that the Charter Commission was not a Charter Commission because the Council lacked authority to create one; that, therefore, the Charter Commission had no right, standing or authority to act as a Charter Commission; and that further, any actions taken by the Charter Commission would be null and void and of no force or effect.
Trial of this matter took place on August 24, 2009. In addition to the various documents introduced into evidence, plaintiffs offered the testimony of Charter Commission Chairman, Philip F. Cossich, Jr. In response, defendants offered the testimony of Plaquemines Parish Council Secretary, Missy LeBlanc, Council Chairperson, Lynda Banta and Councilmember Burghart Turner. After considering the evidence, the trial court denied plaintiffs' request for a Writ of Mandamus and also denied defendants' request for a Writ of *872 Quo Warranto. In oral argument before this Court, both sides agreed that it is inconsistent to deny both the Writ of Mandamus and the Writ of Quo Warrranto.
In his reasons given orally at the end of the trial, the trial judge found that: the language in the Resolution creating the Charter Commission stating as a purpose, "addressing the inconsistencies of the charter," was ambiguous; that the language was similar to the language in Tudela v. Broussard, 581 So.2d 1068, (La.App. 5 Cir.1991)[1]; and that the testimony of council members Banta and Turner suggested that they thought they would "have a chance to take a look at this thing...."
The uncontested facts of the case are that on December 13, 2007, the Plaquemines Parish Council passed and adopted Resolution 07-463, providing in pertinent part that:
A Resolution creating a Charter Commission consisting of 10 members for the purpose of addressing inconsistencies in the Charter for Local Self-Government, Plaquemines Parish, Louisiana; and otherwise to provide with respect thereto.
WHEREAS, recently several sections of the Parish Charter have come into question affecting both the Executive and Legislative Branches of Government; and
WHEREAS, the Council wishes to create a Charter Commission in accordance with Section 5 of Article VI of the Louisiana Constitution of 1974, consisting of 10 Members to address the inconsistencies in the Charter for Local Self-Government, Plaquemines Parish, Louisiana;
NOW THEREFORE:
BE IT RESOLVED by the Plaquemines Parish Council that it hereby creates a Charter Commission, in accordance with Section 5 of Article VI of the Louisiana Constitution of 1974, consisting of 10 members for the purpose of addressing inconsistencies in the Charter for Local Self-Government, Plaquemines Parish, Louisiana, as follows ... [Emphasis added throughout.]
The resolution went on to appoint plaintiffs as members of the Charter Commission and named the council attorney as a consultant to the Charter Commission. Following the adoption of Resolution 07-463, Parish President, William H. Nungesser, via letter, officially notified all Charter Commission members of their appointment to a Charter Commission.
Mr. Cossich, on behalf of the Charter Commission, testified as follows: Shortly thereafter, the Charter Commission began holding regular meetings which were properly noticed and open to the public in accordance with the open meetings laws. The Commission sought and received advice, guidance and suggestions from all living past parish presidents, the current president of Plaquemines Parish, numerous past and present council members (the same members who created the commission), community leaders, business leaders, concerned citizens, and many Plaquemines Parish employees. The Charter Commission reviewed and assessed various charters from other parishes, the Louisiana Constitution and various applicable state and local laws.
Charter Commissioner Stuart Guey later was elected to the Parish Council and resigned from the commission. The remaining Charter Commission members selected Stephen Braud to fill Guey's vacancy. Mr. Cossich testified that this action was done in accordance with the provisions *873 of La. R.S. 33:1395 et seq. No member of the Plaquemines Parish Council objected.
By early April, 2009, a draft of the proposed charter had been completed and the Charter Commission scheduled three public meetings in different locations throughout Plaquemines Parish. After advertising the time and place for these public meetings, they were held on April 14, 2009, April 15, 2009 and April 16, 2009. At each of the meetings, the Charter Commission presented all of the proposed charter changes and held an open forum so that questions and suggestions could be voiced. A majority, if not all of the Plaquemines Parish Council attended those meetings, during which they asked questions and offered suggestions for the proposed charter.
After the three public presentations, the Charter Commission reconvened, and using the suggestions and input derived from the meetings, revised and finalized the "Proposed Charter."
On May 11, 2009 the "Proposed Charter" was unanimously approved by the Charter Commission. The following day, the "Proposed Charter" was delivered to the Plaquemines Parish Council and the Parish President. The Council briefs did not contest any of the foregoing description of the Charter Commissions activities as presented by Mr. Cossich in his testimony. Therefore, we find that the Charter Commission functioned in conformity with what would be expected of a Charter Commission by the Louisiana Constitution and applicable statutes[2].
On May 14, 2009, two days after receiving the Proposed Charter, the Plaquemines Parish Council attempted to revoke and annul Resolution 07-463 by adopting Resolution 09-179. On the same day the Parish Council adopted Ordinances 09-108 and 09-109 which appear to be identical in all respects with the exception that Stuart J. Guey voted in favor of 09-108, but against 09-109. The explanation of why there were two identical Ordinances need not detain us as it has no bearing on the outcome of this case. Suffice it to say that both Ordinances purported to create a "Charter Committee" at the same time they "revoked and rescinded" Resolution 07-463. The Parish President, William Nungesser, vetoed Ordinance 09-108. In consequence of these actions, the plaintiffs initiated this litigation with their petition for a writ of mandamus.
The crux of the Charter Commissioners' argument relies on R.S. 33:1395.2 which states in part: "The calling of an election on a proposed charter once it has been completed by the charter commission is mandatory." [Emphasis added.] It is this "mandatory" language in La. R.S. 33:1395.2 that forms the basis of the plaintiffs' right to relief by mandamus. The Council does not dispute the Charter Commissioners' contention that at no time during the process, during which time there were public notices posted of meetings of the "Plaquemines Parish Charter Commission", did any member of the Parish Council object.
La. R.S. 33:1395.1 provides in pertinent part that:
§ 1395.1. Charter commission, membership, number; term; preparation, submission, and publication of charter A.....Each member of the commission shall hold office until a charter is either adopted or rejected by the registered voters of the municipality.... The members of the commission shall take *874 office immediately after election or appointment and shall propose the charter and submit it to the governing authority of the municipality within eighteen months thereafter. The proposed charter shall not be altered or changed in any way by the governing authority of the municipality.
* * *
C. The full text of the proposed charter shall be published once in the official publication of the municipality or parish within thirty days after its submission to the local governing authority of the municipality or parish. Responsibility for publication rests with the governing body affected....
Thus, La. R.S. 33:1395.2 makes the calling of an election mandatory, not discretionary, and La. R.S. 33:1395.1 requires that the governing body, in this case the Council, publish the "full text" of the proposed charter within thirty days after its submission to the Council, and that when the mandatory election is held, the proposed Charter must be submitted to the voters in unaltered form. All of these requirements are mandatory, merely ministerial, not discretionary, and are, therefore, appropriate for relief by writ of mandamus. In effect, pursuant to La. R.S. 33:1395.1 and 33:1395.2, once a Charter Commission is created, it takes on a life of its own independent of the Parish Council. The term "Charter Commission" as used in Resolution 07-463, the statutes and the Louisiana Constitution, is a term of art that has a very specific legal meaning and, once created, has an effect that by law cannot be limited or vitiated by after the fact interpretation. Therefore, if the Council created a Charter Commission it does not have the authority to refuse to perform its statutory duties once the charter has been submitted to it. This means that once the Charter Commission has been created and the charter submitted, the law requires the Council to submit it in unaltered form.
Therefore, if we find that the Plaquemines Council created a Charter Commission as the resolution says it did, then the plaintiffs are entitled to mandamus relief both as to the right to submit the Charter to the voters and the right to submit it to the voters in unaltered form. As to whether Resolution 07-463 created a Charter Commission, we note that even Resolution 09-179 as well as Ordinance 09-108, both of which attempted to abolish the Charter Commission, implicitly recognized the validity of the Commission when they referred to Resolution 07-463 as having created a "Charter Commission."
The trial judge explained his denial of the Plaintiffs-Appellants Writ of Mandamus in his oral reasons for judgment as follows:
I came here this morning after having read everything leaning one way and I've actually changed my mind on it, after what I saw today. I thought the resolution was okay. That did not affect me at all. The couple of things that affected me were, number 1, this ordinanceI mean, this resolution was created by Melissa LeBlanc, who did an excellent job for 27 years, you know, in the Council's chambers. But with all these attorneys sitting around here, clerk Melissa LeBlanc blew [sic] it up, and I have a problem with the drafting of it.
I've got a problem with theshe admits she made a mistake on it.... The language of it, "the purpose of addressing inconsistencies in the charter." What does that mean? I had a problem with that language. And now I can say it would be easier if it had been said, "addressing the inconsistencies and continuing *875 on with presenting it to the Council."
I think when the two Council members mentioned about how they thought both were deceived, and that had something to do with it. The case, that [Tudela] case. The language in the [Tudela] case is that the Council was the charter committee commission was supposed to make recommendations to amend or replace those sections of the charter that are vague and contradictory, and not in the best interest of the City of Kenner.
And I see this language is very close to that. In that they were to address the inconsistencies of the charter, not particularly that go to the voting rights of the people. Especially when Council members say that, "I thought I would have a chance to take a look at this thing addressing, inconsistencies in the charter." So therefore because of that, I don't think the Plaintiffs have proven their case. And therefore I'm going to deny their request for a mandamus.
The plaintiffs argue persuasively that the plain language of the resolution calling for a "Charter Commission" should be read as written according to the generally prevailing meaning. In spite of the fact that the trial judge employed the term "committee" in referring to the Charter Commission and the Council frequently employed the same term throughout this litigation, Resolution 09-179 creating the Charter Commission clearly refers exclusively to a "Charter Commission" and in no instance makes any reference to the creation of a mere "committee."
The trial court relied on Tudela v. Broussard, 581 So.2d 1068 (La.App. 5th Cir.1991), but Tudela is distinguishable. Resolution 07-463 specifically references Section 5 of Article VI of the Louisiana Constitution of 1974 as its source authority for creating a Charter Commission. The Tudela resolution does not. The Tudela resolution creates a "Charter Review Commission", whereas Resolution No. 07-463 in the instant case creates a "Charter Commission."[3] In other words, by placing the word "Review" in the title of the Commission in Tudela, the resolution signaled that the mission of the Commission was not to result in charter changes which would be placed directly before the voters, bypassing the Parish Council. This conclusion is reinforced by the language in the body of the Tudela resolution requiring the review commission or committee to "provide" the Parish Council with its recommendations. There is no requirement *876 in Resolution 07-463 that the Charter Commission in the instant case report back to the Parish Council. The Resolution in the instant case is silent on that matter because by invoking Section 5 of Article VI of the Louisiana Constitution of 1974, the charter changes adopted by the Charter Commission were required by operation of law to be place in unaltered form before the voters. See La. R.S. 33:1395.1 and La. R.S. 33:1395.2, supra.
Finally, we note that in Tudela, the resolution also referred to the commission in that case as a "committee, a term implying a lesser status than that of the `Charter Commission'", the term employed consistently throughout Resolution 07-463 in the instant case, a commission whose work product was required to be placed before the voters in unaltered form.
Therefore, the Tudela case is distinguishable from the instant case in every material respect and does not support the defendants in any way and these distinctions show that Resolution 07-463 clearly and unambiguously created a Charter Commission. There is no other reasonable explanation for referring to the creation of a Charter Commission pursuant to Section 5 of Article VI of the Louisiana Constitution of 1974.
We also find that the after the fact interpretations of council members Banta and Turner of the meaning of Resolution 07-463 is not persuasive. The Charter Commission refers by analogy to the rule of statutory construction that the understanding of a single member of the legislature, or in this case, a Parish Councilman, is not determinative of legislative intent. Arata v. Louisiana Stadium and Exposition District, 254 La. 579, 609-610, 225 So.2d 362, 372 (1969). Ethyl Corp. v. Collector of Revenue, 351 So.2d 1290, 1293 (La.App. 1st Cir.1977) The intention of a legislator in the enactment of legislation, not expressed to others, though factual, is inadmissible as being irrelevant and of no probative value. Authement v. Davidson, 366 So.2d 986, 989 (La.App. 1 Cir.1978). However, that same intent expressed to the appropriate legislative committees and both houses is admissible as an aid to the courts in determining the true legislative intent. Id. It is the expression of both the intent and purpose of the legislation to the legislature that aids the court in its constitutional function of interpretation. Id. It is not the opinion of the witness/legislator as to what the legislature intended that is admissible, but rather the factual evidence considered by the legislature in enacting legislation. Id.
Regardless, Resolution 07-463 created a Charter Commission, and the fact that the creation of such a commission had legal consequences that neither Mr. Banta nor Mr. Turner foresaw in no way changes the legal consequences. The fact that they may have assumed that the Charter was going to be merely "reviewed" by the Charter Commission and that any work product of the Charter Commission would be referred back to the Council for approval is not persuasive in view of the clear language of Resolution 07-463 and the fact that, as distinguished from Tudela, the Resolution is totally devoid of any "review" language or any language suggesting in any way that the work product of the Charter Commission would be submitted to the Council for approval.
Our review of the testimony of the Council Secretary, Melissa LeBlanc, leads us to the same conclusion as our review of the testimony of Mr. Banta and Mr. Turner. Ms. LeBlanc testified as a witness for the Council that it was her opinion (she is not an attorney) that an Ordinance was the appropriate vehicle for the creation of a Charter Commission but that through her own clerical error, she drafted the *877 document in the form of a Resolution. We give no weight to Ms. LeBlanc's opinion on the legal effects of an Ordinance versus a Resolution, and it would have been error had the trial judge done so. However, she did testify as a matter of fact that when she drafted the Resolution she did so pursuant to a directive "to prepare legislation... creating a Charter Commission." Therefore, we find that Ms. LeBlanc's testimony supports the conclusion that the Resolution was drafted for the purpose of creating a Charter Commission. The fact that Ms. LeBlanc may not have grasped the fact that a Charter Commission once created takes on a life of its own independent of the Council is not relevant and is entitled to no weight.
By way of analogy we direct our attention to La. C.C. art. 9:
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
To the same effect see La. R.S. 1:4:
When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.
Thus, once the Council clearly creates a Charter Commission, as they did here, it cannot, after the fact, modify the effect of that action based on the testimony after the fact of one or two members of the Council expressing what they allege to have been their unspoken intent at the time of enactment. See also Richard v. Hall, 03-1488 (La.04/23/04), 874 So.2d 131.

QUO WARRANTO
The Parish Council argues that the Charter Commission has no right whatsoever to seek a Writ of Mandamus and that any attempt to do so usurps the discretionary power of the Plaquemines Parish Council to formulate ballot proposals and to call elections as per the Plaquemines Parish Charter for Local Self-Government; hence the request for the Writ of Quo Warranto by the Parish Council. The Parish Council also argues that no juridical person was created with the capacity to bring this suit. However, the plaintiffs also sued in their individual capacities.
The Council also contends that the Charter Commissioners were without authority to act because they failed to take and file their oath of office as required by La. R.S. 42:141. However, we find that under the facts of this case the members of the Charter Commission would, at the very least be considered to be at all relevant times de facto commissioners, if not de jure commissioners, as explained by the Louisiana Supreme Court in Thibodeaux v. Comeaux, 243 La. 468, 488-90, 145 So.2d 1, 8-9 (La.1962):
This court has repeatedly held that a public officer's failure to qualify under LSA-R.S. 42:141 will not vitiate his acts if he fulfills the requirements of a de facto officer. In State v. Hargis, 179 La. 623, 154 So. 628, a clerk of court failed to qualify by failing to furnish bond required by law within thirty days after having received his commission. Nevertheless, he took physical possession of the office and performed the duties of clerk for approximately two years before it was discovered that he had not furnished a bond. In ruling on an accused's objection to proceeding with a trial of a criminal case on the ground that the court was not legally constituted due to the lack of a clerk of court, the court recognized the following to be controlling under these facts:
`A person is a de facto officer where he exercises the duties of an office under color of a known and valid appointment *878 or election, but where he failed to conform to some precedent, requirement, or condition, as to take an oath, give a bond, or the like. Vide, `Public Officer,' 22 R.C.L. s 306, p. 588.
`A de facto officer is no more a usurper than is a de jure officer. As long as he is in possession of the office he will be a de facto officer, and all acts performed by him in the exercise of his official functions and strictly within the limits of existing statutes will be considered legal. This is from considerations of public policy.
`The de facto doctrine was introduced into the law as a matter of policy and necessity to protect the interests of the public and individuals, where those interests were involved in the official acts of persons exercising the duties of an office, without being lawful officers. 22 R.C.L. s 307, p. 589.
`And the acts of an officer de facto are as valid and effectual where they concern the public or the rights of third persons, until his title to the office is adjudged insufficient, as though he were an officer de jure. 46 C.J. s 378, p. 1060.'
And in State v. Mayeux, 228 La. 6, 81 So.2d 426, where a deputy sheriff failed to take the oath of office or file the bond required by law, the court said:
`In the case of State v. Hargis, 179 La. 623, 154 So. 628, a de facto officer is defined as a person who exercises the duty of an office under color of a known valid appointment or election, but who failed to conform to some precedent, requirement, or condition, as to take an oath, give bond, or the like. See also 67 C.J.S. Verbo Officers s 146, page 447. It is stated in State v. Breedlove, 199 La. 965, 993, 7 So.2d 221, 230 that `the jurisprudence of this State is well-established that the acts of an officer de facto, so far as they affect the public, should be recognized as valid.'"
Id.
Thus, at the time the Charter was submitted to the Council, the Charter Commission was qualified to act either as a de facto charter commission or as a de jure Charter Commission. In either case, the law mandates that the Council submit the Charter as proposed to the voters in unaltered form.
Therefore, the Parish Council's attempt to rescind the authority of the Charter Commission through Resolution 09-179 as well as Ordinances 09-108 and 09-109 came too late to vitiate the effectiveness of the proposed Charter as the Charter Commission's submission of the Charter antedated those actions.
The Parish Council contends that in order to create any board or commission, Plaquemines Parish Charter Art. 4, § 4.01(A)(24) requires an Ordinance. However, Parish Charter § 401(A)(24) applies only to "advisory boards" and not to the Charter Commission in the instant case.
The Parish Council also argues that because the Charter Commission was created by resolution, it is not valid under Plaquemines Parish Charter Article 4, § 4.01(C) which states that only an Ordinance shall have the effect of law. The trial judge specifically noted in his oral reasons for judgment that he did not agree with this argument and neither do we. La. R.S. 33:1395.1 provides that a Charter Commission "shall ... be appointed in the manner provided by the governing authority of the ... parish." Plaquemines Parish Charter, Art. 1, § 1.01 designates the Plaquemines Parish Council as the "governing *879 authority." In creating the Charter Commission, the Council was not enacting a law which would have had to have taken the form of an Ordinance. An Ordinance would have to be submitted to the Parish President. La. Const. Art. VI, § 5 provides that it is sufficient that the local "governing authority" appoint the commission and in this case, pursuant to Plaquemines Parish Charter Art. 1, § 1.01, the Parish Council has been designated as the "governing authority." The democratic safeguards inherent in such a system are more than fully realized by the requirement that the final product of the Charter Commission be submitted to the popular vote of the electorate. We can see no policy reason why the creation of a Charter Commission whose work product must be submitted to the popular vote of the electorate would be more beneficial to the electorate if created by Ordinance rather than by Resolution.
In this case the Parish elected to do so by resolution which was legally sufficient.
The Parish Council also argues that Resolution 07-463 had a single objective that was stated therein: "for the purpose of addressing inconsistencies in the Charter," and what the plaintiffs' propose exceeds that stated purpose.
The Council relies on Perez v. Plaquemines Parish Commission Council, 391 So.2d 1308 (La.App. 4 Cir.1980), to support its contention that the Plaquemines Parish Charter is a pre-1974 La. Const. Art. VI, § 4 Home Rule Charter, and not an Art. VI, § 5 Home Rule Charter. La. Const. Art. VI, § 4 states that:
Every home rule charter or plan of government existing or adopted when this constitution is adopted shall remain in effect and may be amended, modified, or repealed as provided therein. Except as inconsistent with this constitution, each local governmental subdivision which has adopted such a home rule charter or plan of government shall retain the powers, functions, and duties in effect when this constitution is adopted. If its charter permits, each of them also shall have the right to powers and functions granted to other local governmental subdivisions.
Based on the language above in La. Const. Art. VI, § 4, the Council contends that the method of amending the Charter as set forth in the Charter at the time the Constitution of 1974 was adopted is controlling and that, therefore, charter changes via a Charter Commission as provided for in La. Const. Art. VI, § 5 do not apply. We hold otherwise.
In Perez this Court held that the Plaquemines Parish Charter was a pre-1974 Charter. At the time this Court decided Perez, this Court found that Plaquemines Parish was operating under the Charter adopted in November of 1966. But as this Court pointed out in Plaquemines Parish Council v. Petrovich, 629 So.2d 1322, 1323 (La.App. 4th Cir.1993), Plaquemines Parish has been governed by a post-1974 Charter effective January 1, 1987, creating the President-Council form of government. As La. Const. Art. VI, § 4 applies to only those Charters in existence at the time the Constitution was adopted in 1974, it in no way prevents Plaquemines Parish from adopting a La. Const. Art. VI, § 5 Charter Commission under its post-1974 Charter. Moreover, Section 1.01 of the Plaquemines Parish Charter Art. 1, § 1.01 specifically references La. Const. Art. VI, § 5. Additionally, even La. Const. Art. VI, § 4 when it speaks of amending a charter employs the permissive "may" such that we conclude that it does not preclude the use of other means of amending a charter. That the use of "may" in La. Const. Art. VI, § 4 is intended to be permissive is supported not only by accepted *880 usage in legal documents, but by the fact that it so obviously contrasts with the mandatory "shall" employed five words earlier in the same sentence.
Similarly Plaquemines Parish Charter Art. 8, § 8.05 provides that:
Amendments to the Charter may be proposed by an Ordinance adopted by the Parish Council or by petition of Fifteen (15) Percent of the qualified voters of the Parish, giving their ward, precinct, and address, duly certified by the Registrar of Voters as to the names and signatures of the registered voters on such petition from the registration records in his office. The Parish Council shall hold an election within 60 to 120 days after the adoption of the Ordinance for Amendment, or after receipt of a duly certified Petition for Amendment as above.
The use of the permissive "may" found in both La. Const. Art. VI, § 4 and in Plaquemines Parish Charter Art. 8, § 8.05 reinforces the conclusion that the methods for amending the Charter are set forth therein are not intended to be exclusive, especially when it is recalled as stated earlier that the Charter also incorporates La. Const. Art. VI, § 5.
Therefore, we find that the Council exceeded neither its constitutional authority nor its authority under the Plaquemines Parish Charter when it enacted Resolution 07-0463.

DECREE
For the foregoing reasons, we affirm the trial court's denial of the Council's request for a writ of Quo Warranto; we render judgment in favor of the Charter Commission reversing the trial court's denial of the Charter Commissioners' request for a Writ of Mandamus. Accordingly, we hereby remand to the trial court for the issuance of an Order to the Council ordering the Council to submit the proposed Charter to the voters in unaltered form in accordance with and in the manner prescribed by La. R.S. 33:1395.1 and 33:1395.2.

DENIAL OF QUO WARRANTO AFFIRMED; DENIAL OF MANDAMUS REVERSED AND REMANDED
JONES, J., Dissents for the Reasons Assigned by J. LOVE.
LOVE, J., Dissents and Assigns Reasons.
LOVE, J., Dissents and Assigns Reasons.
I respectfully dissent from the majority's decision to reverse and remand the trial court's denial of the writ of mandamus.
A writ of mandamus
is an extraordinary remedy which is used sparingly by the courts to compel something that is clearly provided by law, and only where it is the sole available remedy or where the delay occasioned by the use of any other remedy would cause injustice; it does not issue in doubtful cases, nor where there is any element of discretion left to the public officer.
Schoeffler v. Drake Hunting Club, 05-499, p. 19 (La.App. 3 Cir. 1/4/06), 919 So.2d 822, 835. A mandamus is used "only when there is a clear and specific legal right to be enforced or a duty which ought to be performed." Hebert v. Abbey Healthcare Group, Inc., 94-1280, p. 4 (La.App. 3 Cir. 5/17/95), 657 So.2d 278, 280. "This writ is never granted in doubtful cases." State ex rel. Hutton v. City of Baton Rouge, 217 La. 857, 47 So.2d 665, 669 (1950). A writ of mandamus is warranted when there is a ministerial duty that requires "no exercise of judgment or discretion, however slight, *881 in their performance." Hebert, 94-1280, p. 4, 657 So.2d at 280. This means the law sought to be enforced is in "plain and unmistakable terms." Simon v. Lafayette Parish Sch. Bd., 93-700, p. 2 (La.App. 3 Cir. 2/2/94), 631 So.2d 626, 627. "The courts will not interfere by mandamus to compel the performance of a duty dependent upon disputed and doubtful facts." State ex rel O'Beirne v. Police Jury of Red River Parish, 16 La.App. 581, 135 So. 57, 59 (1931).
The majority contends, proclaiming that no doubt exists, that Resolution 07-463 and La. R.S. 33:1395, et seq. requires that the Council release the Proposed Charter to the public and hold an election because Resolution 07-463 included the following language:
BE IT RESOLVED by the Plaquemines Parish Council that it hereby creates a Charter Commission, in accordance with Section 5 of Article VI of the Louisiana Constitution of 1974, consisting of 10 members for the purpose of addressing inconsistencies in the Charter for Local Self-Government.
(Emphasis added).
If Resolution 07-463 was interpreted as a law, that law would have to be interpreted "as having the meaning that best conforms to the purpose of the law" if the language "is susceptible of different meanings." La. C.C. art. 10. While, Resolution 07-463 stated that it was created in accordance with Section 5 of Article VI of the Louisiana Constitution of 1974, it also stated that the Commission was created "for the purpose of addressing inconsistencies in the Charter for Local Self-Government." The purpose of that statement conflicts with the stated purpose of the Commission, which was to address inconsistencies in the Charter for Local Self-Government. This creates doubt as to the purpose and interpretation of Resolution 07-463, which is further evidenced by the Council's subsequent revocation of Resolution 07-463 and passage of Ordinance 07-109.
Accordingly, I find that the case sub judice is a case of doubt wherein mandamus should not lie. Resolution 07-463's defined purpose did not state that the Commission was to prepare and submit a revised charter. Instead, Resolution 07-463 states that it created the Commission "for the purpose of addressing inconsistencies in the Charter for Local Self-Government." Although Resolution 07-463 does indicate that the Commission was created pursuant to Article VI, Section 5 of the Louisiana Constitution of 1974, the defined purpose of Resolution 07-463 conflicts with a commission created to act pursuant to La. R.S. 33:1395, et seq. The usage of the language "for the purpose of addressing inconsistencies" directly conflicts with the portion of Resolution 07-463 that states that the Commission was created pursuant to Article VI, Section 5 of the Louisiana Constitution of 1974.
While the language examined in Tudela v. Broussard, 581 So.2d 1068 (La.App. 5th Cir.1991) is not exactly the same, Tudela remains illustrative of a doubtful factual scenario, which prevents the issuance of a mandamus. Similarly, the language in the case sub judice demonstrates doubt as to whether Resolution 07-463 was passed to create a charter commission subject to the requirements of La. R.S. 33:1395. Given the conflicting language contained in Resolution 07-463 and the jurisprudence that mandamus is not suited for cases involving doubt, I do not find that a mandamus is warranted. Therefore, I find that the trial court did not err in denying the Plaintiffs' writ of mandamus.
"Quo warranto is a writ directing an individual to show by what authority he claims or holds public office, or office in a *882 corporation, or directing a corporation to show by what authority it exercises certain powers. Its purpose is to prevent usurpation of office or of powers." La. C.C.P. art. 3901. Having found that the trial court did not err in denying the writ of mandamus because the Plaintiffs failed to prove that Resolution 07-463 was passed to create a commission pursuant to La. R.S. 33:1395, the appeal of the writ of quo warranto is moot.
NOTES
[1] The transcript indicates that the judge says the "Dela" case. That is a misprint by the court reporter. The judge was referring to the Tudela case.
[2] For reasons set forth later in this opinion in the section concerning the Council's Quo Warranto action, we find that the undisputed testimony of Mr. Cossich establishes that the Charter Commission members were de facto commissioners, if not de jure.
[3] RESOLUTION NO. B-7064

A RESOLUTION CREATING A CHARTER REVIEW COMMISSION CONSISTING OF AN APPOINTMENT FROM THE FIVE (5) DISTRICTS AND TWO (2) AT-LARGE COUNCILMEN AND THE CITY ATTORNEY, TO REVIEW THE CITY CHARTER ESTABLISHED IN 1974 AND MAKE RECOMMENDATIONS TO AMEND OR REPLACE THOSE SECTIONS OF THE CHARTER THAT ARE VAGUE, CONTRADICTORY OR NOT IN THE BEST INTEREST OF THE CITIZENS OF THE CITY OF KENNER
* * *
WHEREAS, certain wording in the Charter has been identified as being vague, lengthy or cumbersome; and,
WHEREAS, there is a need to review the Charter to determine if wording needs to be streamlined, simplified, or further clarified; and,
WHEREAS, if the commission identifies aspects of the Charter that they recommend to be changed, then the commission should provide these recommendations to the City Council six (6) months after the creation of the committee.