507 So.2d 207 (1987)
Shirley McNAMARA, Secretary of the Department of Revenue and Taxation, State of Louisiana
v.
CENTRAL MARINE SERVICE, INC.
No. 87-C-0030.
Supreme Court of Louisiana.
May 18, 1987.
Rehearing Denied June 18, 1987.
*208 Marlon V. Harrison, Baton Rouge, for applicant.
Robert Casey, Jones, Walker, Waechter, Poitevent, Carrere & Denegré, Baton Rouge, for respondent.
CALOGERO, Justice.
Pertinent to this case, the Louisiana Sales and Use Tax Statute[1] exempted "materials, equipment and machinery which enter into and become component parts of ships, vessels, including commercial fishing vessels, or barges, of fifty tons load displacement and over, built in Louisiana" and "the gross proceeds from the sale of such ships, vessels, or barges when sold by the builder thereof."[2] The issue here is whether this exemption applies to materials, equipment and machinery which do not enter into and become component parts during construction of the vessels, but rather which replace original components of vessels and barges of the requisite size, owned and operated in intrastate commerce by defendant-respondent Central Marine Service, Inc.
The Louisiana Department of Revenue and Taxation filed suit for sales taxes (plus statutory and legal interest) on transactions occurring between January 1, 1975 and November 30, 1977.[3] The trial court ruled that Central Marine was not entitled to an exemption from the sales tax. The court of appeal reversed, ruling that these transactions come within the exemption provided by La.Rev.Stat.Ann. 47:305.1(A) (West 1970 & Supp.1987). McNamara v. Central Marine Service, Inc., 498 So.2d 783 (La.App.1986). The Department applied for a writ of review, which this Court granted. 501 So.2d 764 (1987). We reverse.
For the reasons discussed below, we determine that the exemption applies only to the materials, equipment, and machinery which enter into and become component parts during construction of ships, vessels, and barges of the requisite size. Thus, Central Marine is not entitled to exemption from the sales tax on materials, equipment and machinery which replace original components of its vessels and barges.
La.Rev.Stat.Ann. 47:302 and 47:321 (West 1970 & Supp.1987) impose a tax of three percent "upon the sale at retail, the use, the consumption, the distribution, and the storage for use or consumption in this state, of each item or article of tangible personal property." The statute defines tangible personal property as "personal property which may be seen, weighed, measured, felt or touched, or is in any other manner perceptible to the senses." Id. 47:301(16). Thus, the replacement parts in this case would be subject to the tax unless section 305.1(A) exempts such transactions.
In interpreting the sales tax statute, we start with the premise that a statute which imposes a tax should be liberally construed in favor of the taxpayer. Chicago Bridge & Iron Co. v. Cocreham, 317 So.2d 605, 610 (La.1975). However, this case involves an exemption from taxation, and exemptions are strictly construed against the taxpayer. Exemptions are an exceptional privilege which must be expressly and clearly conferred in plain terms. Vulcan Foundry, Inc. v. McNamara, 414 So.2d 1193, 1197 (La.1982); Ethyl Corp. v. Collector of Revenue, 351 So.2d 1290, 1293 (La.App.1977), writ denied, 353 So.2d 1035 (La.1978) (citing Mattingly v. Vial, 193 La. 1, 190 So. 313 (1939) and Meyers v. Flournoy, 209 La. 812, 25 So.2d 601, 603 (1946)).
*209 In this case we must determine the intent of the Legislature and the scope of the exemption granted by La.Rev.Stat.Ann. 47:305.1(A). "The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it." La.Civ.Code Ann. art. 18 (West 1952). Section 305.1 was added to the Louisiana Sales and Use Tax Statute by 1959 La.Acts No. 51. The exemption was created to relieve Louisiana shipyards of a competitive disadvantage with shipyards in neighboring states. We must keep in mind the general purpose and object of the law and give the statute a reasonable interpretation that will effect that purpose. J.M. Brown Construction Co. v. D & M Mechanical Contractors, Inc., 275 So.2d 401 (La.1973).
Central Marine argues that the language of section 305.1(A) clearly confers an exemption upon the transactions at issue in this case.[4] It argues that on its face the statute exempts "sales of materials, equipment and machinery which enter into and become component parts of ships, vessels,... or barges," that this language does not limit the exemption to "original" component parts of such vessels. That argument relies upon a narrow focus on the language of the statute. The meaning of a statutory provision is to be determined by looking at the statute in its entirety. Tri-Parish Bank & Trust Co. v. City of Eunice, 343 So.2d 1121, 1123 (La.App.), writ denied, 346 So.2d 206 (La.1977); Legros v. Conner, 212 So.2d 177, 180 (La.App.1968). Furthermore, in interpreting different sections of the Revised Statutes, the court "must give effect to each statutory provision within its proper scope, reconciling ... the various statutory sections as being simultaneous expressions of the legislative will." Bryant v. Long, 180 So.2d 22, 26 (La.App. 1965) (citing Hall v. Rosteet, 247 La. 45, 169 So.2d 903 (La.1964)). Consequently, we must look at more than simply the first phrase of section 305.1(A) in resolving the issue in this case.
The other portion of section 305.1(A) which is relevant to the proper interpretation of the exemption is the following: The exemption applies to "materials, equipment and machinery which enter into and become component parts of ships, vessels, ... or barges, ... built in Louisiana."[5] And those words "built in Louisiana" in section 305.1(A) are immediately succeeded by the exemption for the "gross proceeds from the sales of such ships when sold by the builder" thereof, the use of these words such and builder tying the latter exemption to vessels built in Louisiana. This language suggests that subsection A is directed to component parts on newly built vessels.
*210 Also, there was an independent provision, section 305.1(C),[6] passed as part of the very act creating the exemption pertinent to this case (Act No. 51 of 1959), wherein it was stated that "[t]he provisions of [section 305.1] do not apply to drilling equipment ... unless such equipment is built for exclusive use outside of the state." (Emphasis added.) The exception in subsection C to the exemptions in subsections A and B thus refers to equipment built for certain use, lending further support to the inference that section 305.1 in its entirety was meant to apply to the construction of vessels.
Furthermore, when the Louisiana Legislature passed House Concurrent Resolution No. 233[7] of the 1982 Regular Session in order to direct the Department of Revenue and Taxation and the secretary thereof to afford, with respect to drilling ships, drilling vessels and drilling barges, the same exemption from sales tax as was provided in section 305.1 to other vessels and barges built in Louisiana, they recited in an introductory paragraph:
WHEREAS, in order to prevent the Louisiana shipbuilding industry from being placed at a competitive disadvantage with Texas, Mississippi and Alabama shipbuilders, the Legislature enacted Act 51 of 1959 to clearly exempt vessels built in Louisiana, and their component parts, from sales taxes. (Emphasis added.)
The 1982 legislature thus perceived that the intent of the exemption passed in 1959 was to aid Louisiana shipbuilders. And while that is not controlling, for it is not for the Legislature to interpret or express an earlier Legislature's intent, it is persuasive and supports our own interpretation, which is that subsection A applies only to the construction of vessels.
If the Legislature had intended to exempt repair parts, it could have done so in the specific language it used in other provisions of the Louisiana Sales and Use Tax Statute. Subsection B, also passed as part of section 305.1 in Act No. 51 of 1959, relating to ships and vessels operating exclusively in foreign or interstate coastwise commerce (not applicable here), exempts repair services performed upon those ships and vessels and the "materials and supplies used in such repairs where such materials and supplies enter into and become a component part of such ships and vessels." Additionally, section 305.20(C)(1) and (3), added to the Louisiana Sales and Use Tax Statute by 1975 La. Acts No. 811, § 1, specifically exempts repair services and the "materials and supplies necessary for repairs to [a Louisiana commercial fishing] vessel if they are purchased by the owner-operator and later become a component part of the vessel." In these provisions, the Legislature clearly expressed its intent to exempt parts used to repair ships and vessels, an intent which is not similarly expressed in section 305.1(A).
Central Marine makes several other arguments in support of its position. One is somewhat difficult to comprehend. Essentially, it is that while section 305.1(A) does not expressly exempt repair services performed upon the ships and vessels and the materials and supplies used in such repairs where such materials and supplies enter into and become a component part of such ships and vessels, as in sections 305.1(B) and 305.20(C)(1) and (3), nonetheless section 305.1(A) was meant to and does apply simply to the parts which are purchased for installation in connection with repairs. To the extent that we understand this argument, it is without merit.[8]
*211 Central Marine also argues that construing the first part of subsection A to exempt materials, equipment, and machinery which become component parts of new ships only, would be redundant because shipbuilders who build vessels for sale to others are already exempt from sales tax on the materials, equipment and machinery which become component parts of the vessel in connection with their original construction, by other provisions of the Louisiana Sales and Use Tax Statute. Sections 302(A)(1) and 321(A)(1) apply Louisiana sales tax to the sales price of tangible personal property when it is sold "at retail" in Louisiana. Section 301(10)'s definition of "sale at retail" excludes a sale of "materials for further processing into articles of tangible personal property for sale at retail" and a sale for "resale in the form of tangible personal property." Central Marine argues that the equipment, materials, and machinery purchased by shipbuilders are purchases for further processing into the vessel (in the case of the original construction) or for resale (in the case of a replacement part) and are thus already excluded from taxation by section 301(10). Therefore, it argues, the first phrase of subsection A must have been written to exempt replacement parts. Otherwise there was no need for the exemption.[9]
This is simply not so. There was a need (or purpose) for the exemption, unrelated to concern about replacement parts, and relating only to the shipbuilding industry. That need, or purpose, is better understood in the context of the events which had transpired just prior to passage of section 305.1.
Apparently, between 1940 and 1955, the shipbuilding industry paid no Louisiana sales taxes whatsoever.[10] Then, in 1955, the Department issued a letter opinion and regulation 2-47A entitled "Regulation pertaining to ship contractors." That regulation concluded that the Louisiana sales tax is not applicable to the gross construction price of a vessel built for a particular owner by the job, and that sales tax would be payable by the shipyard only with respect to materials consumed in the construction. But, if the shipyard built a vessel for no particular customer, with the intention of selling the vessel as stock in trade, the sales tax would apply to the later sale of the vessel.[11]
Despite this earlier regulation, the Department began claiming sales tax on the gross contract price of vessels built for *212 particular owners. The shipbuilding industry resisted vigorously[12] and apparently secured passage of section 305.1. Whether a shipbuilder was a "contractor" and therefore the ultimate consumer of the materials used in shipbuilding, in which case the builder would be required to pay the tax on those materials, or whether the shipbuilder was a retail seller and required to collect the tax from the buyer, was thus not then resolved, for it became irrelevant. Section 305.1, passed in 1959, exempted from the Louisiana sales tax the materials and supplies going into vessels built in Louisiana shipyards, as well as the gross sales price of such vessels when sold by the builders. The exemptions for both the materials and supplies and the gross sales price exempts the shipbuilding industry under either interpretation (contractor/consumer or retail seller). It also exempts both a ship built for a customer and one built as stock in trade, contrary to the old regulation 2-47A. The statutory exemption was written so that neither the shipbuilder, nor a vessel owner, nor a vessel purchaser would owe or have to remit any sales tax on newly built vessels (provided that the qualifications of the statute were met).[13] These were apparently the reasons which prompted passage of La.Rev.Stat.Ann. 47:305.1(A), not a desire on the part of the Legislature to exempt replacement parts on repaired vessels, as Central Marine argues.
The Legislature intended, when using the words "materials, equipment and machinery which enter into and become component parts of ships, vessels, ... or barges ... built in Louisiana," to allow the exemption for materials, equipment and machinery which enter into the ship, vessel, or barge during construction of such vessels. Materials, equipment and machinery which replace components of the ship, vessel, or barge are not exempted by section 305.1(A).

Decree
For the foregoing reasons, the judgment of the court of appeal is reversed. The judgment of the trial court in favor of the plaintiff is reinstated.
REVERSED; JUDGMENT OF DISTRICT COURT REINSTATED.
NOTES
[1] La.Rev.Stat.Ann. 47:302-318 (West 1970), as supplemented by id. 47:321-325 (West Supp. 1987).
[2] Id. 47:305.1(A) (West 1970). This provision was amended after the relevant period in this case to expressly exempt drilling ships and drilling barges. 1982 La. Acts No. 56, § 1; 1985 La. Acts No. 762, § 1.
[3] The Department is claiming sales taxes on invoiced repairs performed in Louisiana shipyards on Central Marine's barges and pushboats. Central Marine is claiming an exemption for the charges appearing on those invoices for replacement parts. It is not claiming any exemption for the remaining portion of the invoices (including labor). Interestingly, the court of appeal judgment exempted the entire invoiced amounts, labor charges as well as replacement parts.
[4] In support of its arguments Central Marine relies largely upon the opinion, or speculation, of the author of a law review article. In discussing myriad provisions of the Louisiana Sales and Use Tax Statute, the author addresses the issue in two brief sentences, which are as follows:

This 1959 Act of the legislature, by a literal interpretation, appears to exempt not only materials and supplies which become a part of a vessel during initial construction, but also those which become a part of a vessel by way of repairs. The only requirement is that the materials and supplies enter into and become component parts of vessels of fifty or more tons load displacement in Louisiana. (Emphasis added.)
Marshall, La. Sales and Use Tax Problem of the Maritime Operator, 35 Tul.L.Rev. 183, 196 (1960).
[5] The court of appeal said "both sides agree ... that the words `built in Louisiana' ... can be construed to mean built in Louisiana or in any other state." 498 So.2d at 784. It apparently derived this finding from a letter attached to Central Marine's brief in that court, a document not part of the trial court record and one which was apparently solicited from the Department's Director of the Sales Tax Section by Central Marine's attorney in connection with this very tax matter.

The court of appeal should not have given significance on this solicited letter which was not introduced at trial. Furthermore, it is not clear to us that the Department, in applying the law for the purpose of this exemption, does not distinguish between those vessels built in Louisiana and those built in other states. In all events, this issue is not relevant here. However, for the purpose of construing the exemption in section 305.1(A), the Legislature's use of the words "built in Louisiana" has bearing on the meaning and intent of the exemption.
[6] Subsection C was repealed by 1982 La. Acts No. 56, which amended subsection A to expressly exempt drilling ships and drilling barges from the sales tax.
[7] This Resolution authorizes and directs the Department to alter its regulations to exempt drilling ships, drilling vessels and drilling barges from sales taxes.
[8] Central Marine insists that sections 305.1(B) and 305.20(C)(1) and (3) are not the only exemptions for repair parts, that section 305.1(A) also exempts repair parts. It bases this argument on the contention that a "replacement" is a purchase of equipment which enters into and becomes a component part of the vessel and that such a transaction is quite different from a "repair" to an existing component part. By way of example, Central Marine contrasts the installation of a new rudder, a "replacement," with the straightening of an existing, bent rudder, a "repair." Under this interpretation, section 305.1(B) (regarding vessels operating in interstate coastwise commerce) and section 305.20(C)(1) and (3) (regarding commercial fishing vessels) would exempt both types of transactions, the purchase of a replacement part and the charge for repair, which consists of work upon a component part; but section 305.1(A), argues Central Marine, exempts only a "replacement" on a ship or vessel of the requisite size.

Central Marine's attempt to differentiate between a "replacement" and a "repair" is not supported by the clear meaning of the language used in the statute. In Webster's New Collegiate Dictionary 972 (1980), one definition of "to repair" is "to restore by replacing a part." When sections 305.1(B) and 305.20(C) refer to "repairs," the reference is to the ships and vessels that are being repaired, by replacing parts, not repairs to the individual component parts, as Central Marine argues. When the Legislature intended to exempt the type of transaction that Central Marine characterizes as a "repair," the restoring of the existing component part with only incidental supplies consumed in the process, it exempted repair services and materials and supplies used in such repairs which become a component part of the vessel being repaired. La.Rev.Stat.Ann. §§ 305.1(B), 305.20(C)(1) and (3). It made no such exemption for repair services and materials and supplies used in repairs in section 305.1(A), which exempts only original component parts.
Central Marine makes another argument, that the Department has not restricted the exemption to newly-built vessels. It relies on the Department's admission that equipment that becomes a component part during the major refurbishing of an older vessel or hull is exempt. It appears that the Department's position in that regard, if that is the case, is a reasonable one. In all events, it has little or no bearing on the issues in this case.
[9] In response to Central Marine's argument, the state argues that shipbuilders are contractors and, in the absence of section 305.1(A)'s specific exemption, would be required to pay tax on the materials consumed in construction.
[10] Marshall, supra note 4, at 181.
[11] Id. at 185-86, 188-89.
[12] Id. at 185.
[13] Id. at 189.