# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #015


FROM: CLERK OF SUPREME COURT OF LOUISIANA


The Opinions handed down on the **15th day of March, 2016**, are as follows:


**BY CLARK, J.**:


2015-C -1793         COASTAL DRILLING COMPANY, L.L.C. v. BARRY J. DUFRENE, IN HIS
                     CAPACITY AS DIRECTOR OF ST. MARY PARISH SALES AND USE TAX
                     DEPARTMENT AND EX-OFFICIO TAX COLLECTOR FOR ST. MARY PARISH
                     (Parish of St. Mary)

                     We reverse the decree of unconstitutionality of LAC 61:I:4403(A)
                     and (B)(2)render summary judgment in favor of Coastal Drilling.
                     Accordingly, we order the refund of all taxes paid under protest,
                     along with interest as allowed by law.
                     REVERSED AND RENDERED.

                     KNOLL, J., dissents and assigns reasons.
                     WEIMER, J., additionally concurs and assigns reasons.
                     HUGHES, J., dissents with reasons.

SUPREME COURT OF LOUISIANA

NO. 2015-C-1793

COASTAL DRILLING COMPANY, L.L.C.

VERSUS

BARRY J. DUFRENE, IN HIS CAPACITY AS DIRECTOR OF
ST. MARY PARISH SALES AND USE TAX DEPARTMENT AND
EX-OFFICIO TAX COLLECTOR FOR ST. MARY PARISH

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF ST. MARY

**CLARK, Justice**

At issue is whether the materials, machinery, and equipment that became part of an inland marine drilling barge during its reconstruction following a fire are exempt from sales and use tax. La. R.S. 47:305.1(A) exempts these materials when vessels are "built in Louisiana." The Louisiana Department of Revenue promulgated LAC 61:I:4403(A) and (B)(2) to clarify that certain reconstruction projects fall within the scope of the statutory exemption. The lower courts found the regulation exceeded the scope of the statute and declared it unconstitutional. We granted this writ application to determine the constitutionality of LAC 61:I:4403(A) and (B)(2), (hereinafter intermittently referred to as "the regulation") and to review its application to the facts at issue. For the reasons that follow, we find the regulation constitutional and applicable to the facts herein. Accordingly, we reverse the court of appeal's judgment and render judgment in favor of the taxpayer.

**FACTS AND PROCEDURAL HISTORY**

Coastal Drilling Company, L.L.C., (hereinafter referred to as "Coastal Drilling"), owns an inland marine drilling barge, Rig 21. Rig 21 was in use in St.

Mary Parish when it caught fire. The fire burned for thirteen hours and caused extensive loss to the vessel. Recovery efforts were conducted, and the vessel was transferred to a shipyard in Jefferson Parish. Ultimately, Rig 21 was reconstructed at a price of approximately $11 million. Coastal Drilling paid no sales tax in Jefferson Parish, pursuant to an exemption enunciated in La. R.S. 47:305.1(A) and further clarified in LAC 61:I:4403(A) and (B)(2).

Upon completion of the work, the vessel was transported to St. Mary Parish for resumed use. An audit in St. Mary Parish revealed that Coastal Drilling had not paid state or local sales tax on the materials, machinery, or equipment purchased in Jefferson Parish during the restoration of the vessel. Thereafter, the Director of the St. Mary Parish Sales and Use Tax Department and Ex-Officio Sales and Use Tax Collector for St. Mary Parish, (hereinafter "the Collector"), issued a use tax assessment on the items used in the reconstruction of Rig 21.[1] Coastal Drilling timely paid under protest the use tax, penalties, and interest, in the amount of $382,928.32. On September 7, 2010, Coastal Drilling filed suit against the Collector, seeking a refund of the full amount paid under protest.

The Collector answered the suit, alleging the tax exemption provided for in La. R.S. 47:305.1(A) did not apply to the materials used to reconstruct Rig 21 because such parts were not installed during "original construction." The Collector also averred the regulation promulgated by the Department of Revenue, upon which Coastal Drilling relied, was not applicable to the instant case insofar as Rig 21 was only "damaged" by fire and not "destroyed." The Collector also filed a reconventional demand, alleging the regulation was unconstitutional.

Coastal Drilling and the Collector filed cross motions for summary

---

[1] The exemption applies to "sales tax;" however, La. R.S. 47:301(19)(b) provides, in relevant part:

> No use tax shall be due to or collected by: . . . Any political subdivision on tangible personal property used, consumed, distributed, or stored for use or consumption in such political subdivision if the sale of such property would have been exempted or excluded from sales tax at the time such property became subject to the taxing jurisdiction of the political subdivision.

2

judgment. The trial court denied Coastal Drilling's motion and granted the Collector's motion, finding the vessel was damaged and not destroyed. Accordingly, it found the repairs did not qualify as reconstruction, and, thus, Coastal Drilling was not entitled to the exemption. The issue of constitutionality was not reached.

Coastal Drilling appealed. The court of appeal vacated the trial court's judgment and remanded the matter for the constitutionality of the regulation to be considered. *Coastal Drilling Co., L.L.C. v. Dufresne*, 12-0744 (La. App. 1 Cir. 2/18/13) (unpublished opinion).

On remand, cross motions for summary judgment were filed regarding the constitutionality of the regulation. On March 18, 2014, the trial court found the regulation exceeded the scope of the exemption provided for in La. R.S. 47:305.1, thereby violating the separation of powers provision of the Louisiana Constitution of 1974, art. II, sec. 2. Accordingly, the trial court declared the regulation unconstitutional and granted the Collector's motion for summary judgment.

Coastal Drilling appealed. The court of appeal affirmed the declaration of unconstitutionality, finding the regulation's inclusion of "reconstruction" was an impermissible administrative expansion of the statutory use of the word "built."[2] *Coastal Drilling Co., L.L.C. v. Dufresne*, 14-960 (La. App. 1 Cir. 6/5/15), 174 So.3d 673. Coastal Drilling applied for writs. We granted certiorari to determine the constitutionality of the regulation and to consider the correctness of the grant of summary judgment in favor of the Collector. *Coastal Drilling Co., L.L.C. v. Dufresne,* 15-1973 (La. 11/20/15), _So.3d_.

---

[2] We note rules and regulations promulgated by an administrative agency or department are not a "law or ordinance" under La. Const. art. V, sec. 5(D); thus, a trial court's declaration of their unconstitutionality is not directly appealable to the Louisiana Supreme Court. *See Vicksburg Healthcare, LLC v. State through Dept. of Health and Hospitals*, 10-1248 (La. App. 1 Cir. 3/25/11) 63 So.3d 205; *Holthus v. Louisiana State Racing Comm'n,* 569 So.2d 547 (La. 1990); and *Benelli v. City of New Orleans,* 474 So.2d 1293, 1294 (La. 1985).

3

# RELEVANT LAW AND ARGUMENTS

La. R.S. 47:305.1(A) provides, in pertinent part:

The tax imposed by taxing authorities shall not apply to sales of materials, equipment, and machinery which enter into and become component parts of ships, vessels, or barges, including commercial fishing vessels, drilling ships, or drilling barges, of fifty tons load displacement and over, built in Louisiana nor to the gross proceeds from the sale of such ships, vessels, or barges when sold by the builder thereof.

This exemption on component parts used in certain vessels built in Louisiana was first enacted in 1959. The purpose of the statute was to make the Louisiana shipbuilding industry competitive with that of other states, where more favorable tax laws existed in the form of exemptions on construction materials. *See* Senate Committee on Revenue and Fiscal Affairs, Minutes of Meeting, May 17, 1982; s*ee also McNamara v. Central Marine Service, Inc.*, 507 So.2d 207, 209 (La. 1987). ("The exemption was created to relieve Louisiana shipyards of a competitive disadvantage with shipyards in neighboring states.")

In 1987, the Department of Revenue promulgated LAC 61:I:4403, which provides, in pertinent part:

A. To qualify for exemption under R.S. 47:305.1(A), materials, machinery, and equipment that become component parts of ships, vessels, or barges of 50 tons load displacement and over, built in Louisiana, must be added during construction or reconstruction. Materials, machinery, and equipment that replace worn components are not exempt under R.S. 47:305.1(A).

B. Reconstructions qualify for exemption under R.S. 47:305.1(A) if they:

. . .

2. restore the craft to seaworthiness following its destruction by sinking, collision, or fire.

Coastal Drilling argues the fire clearly destroyed the vessel and the materials, machinery, and equipment added during reconstruction restored the vessel to seaworthiness. Thus, it contends the reconstruction work plainly qualifies

for the exemption from sales and use tax under the regulation. It is Coastal Drilling's position that the regulation simply applied the statutory words "built in Louisiana" to the specific facts of reconstruction following a catastrophic event, including a fire. It contends the application of a tax statute to a specific fact situation is precisely within the authority given to the Department of Revenue by the legislature and that nothing in the regulation contradicts the purpose of the statute. To the contrary, the regulation furthers the purpose of the statute, as it serves to put Louisiana on equal footing with other states and keeps extensive construction work and costly projects in the state.

The Collector, however, argues the restoration work amounted to "repairs" rather than "reconstruction;" thus, the exemption as defined by the regulation is not applicable. (*See* La. R.S. 47:301(14)(g), which imposes sales tax on the furnishing of repairs to tangible personal property). The Collector views any work performed after original construction as a repair. Pursuant to this interpretation, use of any part of a pre-existing vessel to restore or remedy the vessel's condition is a taxable repair, regardless of the expense, nature, or duration of the job.[3]

Additionally, the Collector cites to prior jurisprudence for the proposition that the statutory exemption applies only to purchases made in connection with the *original* building of certain *new* ships, vessels, and barges.[4] Alternatively, and primarily, it asserts the regulation is unconstitutional as it exceeds the scope of La. R.S. 47:305.1(A). The Collector contends the regulation is inconsistent with the statute insofar as the statute makes no mention of "reconstruction," "seaworthiness," or "destruction," nor does it use a catastrophic event as a trigger

---

[3] In a tangential manner, the Collector contends Coastal Drilling exaggerates the damage, suggesting that even if the regulation were applicable, the work at issue still does not qualify as reconstruction; rather, the restoration of the vessel is merely a repair. However, the Collector offers no discernible test as to what would rise to the level of "reconstruction" in the Collector's view.

[4] *See McNamara v. Central Marine Service, Inc.*, 507 So.2d 207 (La. 1987); *Canal Barge Co., Inc. v. McNamara*, 511 So.2d 1196 (La. App. 4 Cir. 1987); *Compass Offshore, Inc. v. McNamara*, 526 So.2d 425 (La. App. 4 Cir. 1988); and *R&B Falcon Drilling USA, Inc. v. Secretary, Dept. of Rev.*, 09-256 (La. App. 1 Cir. 1/11/10), 31 So.3d 1083.

for the exemption's application. In light of this inconsistency, the Collector argues the Department of Revenue's regulation amounts to an administratively created exemption, which exceeds the legislature's grant of authority and, effectively, violates the principle of separation of powers. La. Const. art. I, § 2. To this point, the Collector emphasizes that had the legislature intended to exempt reconstruction or the replacement of used parts in pre-existing vessels, it very easily could have done so. Because the legislature did not confer, in clear and plain terms, the privilege of the exemption to reconstructions, one does not exist.

## DISCUSSION

### *Constitutionality*

As stated above, La. R.S. 47:305.1(A) creates a sales tax exemption for "materials, equipment, and machinery which enter into and become component parts of ships, vessels, or barges, including commercial fishing vessels, drilling ships, or drilling barges, of fifty ton load displacement and over *built in Louisiana*." (Emphasis added). The statute was enacted in 1959 by Act No. 51, with the purpose of making Louisiana competitive in the shipbuilding industry in light of the favorable tax exemption laws in neighboring gulf-coast states. As described by the Department of Revenue's representative, who was employed by the Department when the regulation was drafted, a widely-publicized shipwreck occurred in the Mississippi River. The event triggered questions regarding the applicability of the sales tax exemption to extensive reconstruction of a destroyed vessel. As a result, the Department of Revenue promulgated LAC 61:I:4403, which clarifies that the exemption of La. R.S. 47:305.1(A) applies to reconstruction if such work "restore[s] the craft to seaworthiness following its destruction by sinking, collision, or fire." LAC 61:I:4403(B)(2). The regulation further distinguished the component parts added during "reconstruction" from those "that replace worn components." The latter component parts are not exempt.

6

*See* LAC 61:I:4403(A).

We are tasked with determining the regulation's constitutionality.[5] A regulation can be struck down as being unconstitutional only (1) if the regulation exceeded the authority delegated to the administrative body by the legislature or (2) it exceeded the scope of the statute under which it was promulgated, as evidenced by a construction that is contrary to the statute's purpose. *See State v. Alfonso,* 99-1546 (La. 11/23/99), 753 So.2d 156, 160, and *Jurisich v. Jenkins*, 99-0076 (La. 10/19/99), 749 So.2d 597, respectively.

In *Krielow v. Louisiana Dept. of Agriculture and Forestry*, 13-1106 (La. 10/15/13), 125 So.3d 384, we stated "the legislative branch has the authority to delegate to administrative boards and agencies of the State the power to ascertain and determine the facts upon which the laws are to be applied and enforced." Act No. 51 of 1959 gave express authority to the Collector to "promulgate rules and regulations designed to carry out the provisions of this section." Today, that authority is given to the Department of Revenue via La. R.S. 47:1511.[6] Thus, the Department of Revenue is authorized to prescribe rules and regulations to further the purpose of the statute. With express authority granted to the Department of Revenue to specify particular factual situations to which the statutory exemption applies, the regulation passes the first obstacle against constitutionality, as it does not exceed the authority granted by the legislature.

Next, we must turn our attention to the viewpoint of the lower courts and the Collector that the regulation exceeds the scope of the statute. The interpretation of

---

[5] We note the use tax at issue was assessed by a local government, not the State. However, the Uniform Local Sales Tax Code, in 2003, made the regulation applicable to local sales and use taxes in addition to state taxes. La. R.S. 47:337.2. Thus, the issue is squarely before us.

[6] La. R.S. 47:1511 provides:

> In addition to specific authority granted to the secretary elsewhere, the secretary is authorized to prescribe rules and regulations to carry out the purposes of this Title and the purposes of any other statutes or provisions included under the secretary's authority. These rules and regulations shall be promulgated pursuant to the provisions of the Administrative Procedure Act and will have the full force and effect of law.

the words "built in Louisiana" is at the heart of this legal battle. This court in *Traigle v. PPG Industries, Inc.*, 332 So.2d 777, 782 (La. 1976), explained that "an administrative construction cannot have weight where it is contrary to or inconsistent with the statute." Thus, we must re-visit the intent of the legislature in enacting the statute and determine whether the regulation furthers or frustrates that purpose.

A review of the record reveals that neither party disputes that La. R.S. 47:305.1(A) was the result of a legislative desire to remove the commercial disadvantage to Louisiana shipbuilders that neighboring states' more favorable tax laws created. The legislature enacted a sales tax exemption on certain materials used in shipbuilding to keep high-cost construction jobs in Louisiana. This purpose is highlighted by the legislature's use of a size restriction on the vessel ("of fifty ton load displacement and over") and a geographic restriction on the construction ("built in Louisiana"). *Id.* Accordingly, it is clear the legislative intent behind the statute was to ensure that large, expensive shipbuilding projects stayed in the state and did not follow the more attractive exemption laws made available to buyers by other states. We see no express intent to limit the exemption to new or original construction or to require that the parts must be new or unused.

We turn now to the regulation, which clarifies that the exemption applies to materials used in reconstruction. The regulation sets forth a three-part test for reconstruction: (1) the vessel was restored to seaworthiness (2) after being destroyed (3) by sinking, collision, or fire. LAC 61:I:4403(B)(2). This test envisions extensive, restorative work and the regulation itself disqualifies the mere replacement of worn parts. The Department of Revenue's representative testified "[r]econstruction would be basically the - - - the equivalent of an acquisition of a new thing where the vessel was so extensively damaged by sinking, collision, or fire that it - - that was the commercially best alternative . . ." He makes the

8

analogy to an automobile that is considered "totaled" by an insurance company when the cost of repair is significant enough to classify the damage as a total loss and to justify the acquisition of a new vehicle. The representative distinguishes the automobile industry from the shipbuilding one, where the cost of scrapping a multi-million dollar vessel and starting from scratch is not feasible from an economic standpoint. He states, "I think some of us in the department, perhaps, began to realize that maritime property is - - is perhaps restored in ways that other types of property would not be restored for whatever reasons, you know. . . . we kind of understood that ships sometimes are maintained to a greater extent and restored to a greater extent than other kinds of property."

We find that the clearly discernible test set forth in the regulation makes it clear that only major reconstruction that takes a non-functioning vessel back to the status of seaworthy is exempt. The exemption does not cover repairs, replacement of worn parts, restorative work done in the absence of a catastrophic event, or work done to vessels that was ancillary to restoring the boat to seaworthiness. Ships are of such a unique character that, following a catastrophic event, restoration of a destroyed vessel to full functionality is equivalent to original construction or new acquisition. The fact that an owner, for obvious economic reasons, chooses to incorporate a pre-existing component of the vessel, such as the hull, into the reconstructed vessel, or restore as much as the destroyed vessel as possible, does not preclude a finding that reconstruction is a part of the shipbuilding industry that the legislature wished to keep in Louisiana. These jobs are expensive ones that a prudent ship owner would otherwise outsource to another state with more beneficial tax laws. Such a result would be contrary to the overall purpose of the legislation. The regulation, then, only makes the exemption applicable to the same large construction projects contemplated by the legislature when it chose the tonnage requirements and the words "built in Louisiana" in the underlying statute.

Accordingly, we find no inconsistency between the regulation and the statutory purpose.

As added support, we take note of the contemporaneous construction principle, which gives "substantial and often decisive weight" to an agency's long-standing interpretation. *Traigle*, 332 So.2d at 782. This regulation has been in existence since 1987; such a time-endured construction by an agency "may reasonably be presumed to be in accord with the legislative intent." *Id.*

Also in *Traigle*, this court noted the existence of other principles of statutory construction, which were incidentally relied upon by both parties in the instant case and the court of appeal. However, we found legislative intent to be the paramount consideration:

> Other principles of statutory construction are also urged as applicable, such as: Where there is reasonable doubt as to the meaning of a tax statute, the doubt is ordinarily resolved, in the absence of other guide to the legislative intent, in favor of the taxpayer. See *United Gas Corporation v. Fontenot*, 241 La. 564, 129 So.2d 776 (1961); 3 Sutherland, Statutory Construction, Section 66.01 (4th (Sands) ed., 1974). Too, it is suggested that, in the present case, this principle is qualified by the further principle that claims of exemption from a tax otherwise to apply are strictly construed against the person claiming the exemption. See *Roberts v. City of Baton Rouge*, 236 La. 521, 108 So.2d 111 (1959) and decisions therein cited; 3 Sutherland, Statutory Construction, Section 66.09 (4th (Sands) ed. 1974).
>
> Nevertheless, the aim of all of these principles of interpretation is to ascertain the legislative intent as to the question at issue.

*Id.*

As evidenced above, we find a broad legislative intent to include, within the purview of the exemption, reconstruction efforts that are the commercial equivalent to original or new construction. We see nothing in the plain language of the statute that restricts the reading to a more narrow definition. Accordingly, we reverse the finding of unconstitutionality and declare LAC 61:I:4403(A) and (B)(2) valid inasmuch as it does not exceed the authority granted to the agency by the legislature, nor does it exceed the scope of La. R.S. 47:305.1.

*Application*

Having found the regulation constitutionally valid, we turn now to its application to the facts.[7] The Collector repeatedly makes the argument that there is simply no such thing as "reconstruction." In its view, there are only two conceivable categories of construction: original construction and repairs, the former being exempt from sales tax, and the latter being taxable. We necessarily reject this logic in finding the regulation, which defines "reconstruction," constitutional. Thus, the only issue before us with regard to applicability of the regulation is whether the facts surrounding the reconstruction of Rig 21 meet the test set forth in LAC 61:I:4403(B)(2), which, again, grants an exemption to materials used in reconstructions if the reconstruction "restore[s] the craft to seaworthiness following its destruction by sinking, collision, or fire."

The catastrophic event requirement is readily satisfied; indeed, no one disputes the occurrence of the fire. The other two components of the definition, however, are disputed. The Collector makes much of the ambiguity of the term "seaworthiness," arguing its roots in maritime personal injury law have no bearing in a tax case. However, we find the term to have its general maritime meaning, "fit for its intended purpose." (*See Foster v. Destin Trading Co.*, 96-0803 (La. 5/30/97), 700 So.2d 199, 209, "[t]he test for determining unseaworthiness is one of reasonable fitness. The vessel, its equipment, and appurtenances need not be perfect, but all must be reasonably fit for their intended purpose.") This common understanding of the term was echoed by the representative for the Department of Revenue, who opined: "I suppose it would be the maritime equivalent of road-

---

[7] We find the interpretation of "reconstruction" found in LAC 61:I:4403 to be a legal question, afforded *de novo* review. *State v. Louisiana Land and Exploration Co.*, 12-0884, p. 8 (La. 1/30/13), 110 So.3d 1038, 1044. Thus, we see no need for remand to consider the regulation's application to the facts. To the extent it could be argued there exists a factual question of whether the work done is non-taxable "reconstruction" or taxable "repairs," we expressly note that we are basing our decision on a fully developed record after arguments from both parties. The Louisiana Constitution explicitly extends the jurisdiction of appellate courts in civil cases to review the facts as well as law and allows judgments to be rendered on the merits without the formality of a remand. *Gonzales v. Xerox Corp.*, 320 So.2d 163, 165 (La. 1975). As further support, we are tasked with reviewing a grant of summary judgment in favor of the Collector. Summary judgments are reviewed *de novo*. *Schroeder v. Board of Supervisors of La. State Univ.*, 591 So.2d 342, 345 (La. 1991). Thus, no deference is owed to any factual findings made below.

11

worthiness with respect - - with respect to a road vehicle, you know, where it's able to be used on waterways to - - for - - [its intended purpose]."[8] This is a reasonable test for helping to distinguish between "repairs" and "reconstruction." If the refurbishment was done to restore the vessel to its intended purpose after a catastrophic event rendered it incapable of performing its intended purpose, the exemption applies.

The Collector also argued Rig 21 was not "destroyed" but was merely damaged. The Collector appears to advance two alternative grounds to support this argument. First, it contends "destruction" requires an elimination of the thing. We find this contention to be an illogical one. If the regulation required abolition of the vessel, there would be nothing to "reconstruct." A ship owner would have to start anew with original construction of a vessel, which, indisputably, comes within the statutory understanding of "built." There would have been no need to promulgate the regulation if only original construction was intended. Thus, this argument has no merit.

The second argument the Collector advances is that, even if the regulation envisioned something less than total obliteration, the loss Rig 21 suffered as a result of the fire did not rise to the level of "destruction." The Collector does not, however, offer a standard by which to judge this moving target and rejects, as vague, the standard of "unseaworthiness."

We interpret the word "destruction" in context with the whole regulation. ("When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." La. Civ.Code art. 12.) "Destruction" contemplates the condition the vessel is in after a sinking, collision, or fire. Additionally, the regulatory definition of "reconstruction" requires that the catastrophic event render the craft unseaworthy

---

8 The bracketed words were supplied by counsel, but the representative agreed with the statement.

and that the restorative work result in the craft's seaworthiness. Thus, the context surrounding the word "destruction" evidences a clear intent to include a vessel's refurbishing when it has been so extensively impaired from a very specific event (fire, sinking, or collision), that it no longer can operate for its intended purpose. We find this to be a clearly articulated test and a reasonable one suited for meeting the legislative goal of relieving shipbuilders of the heavy tax burden of competing with other states for large jobs that are commercially and industrially equivalent to new construction.

Armed with an understanding of what the regulatory definition of "reconstruction" is, we consider the extent of the damages to Rig 21 occasioned by the fire. The fire burned for 13 hours and caused the fuel and oil tanks to explode. The record contains evidence of damage to and/or destruction of, among other things, the entire triple-deck superstructure, the motor control center, generator engines, electrical system, wiring, lighting system, air conditioning, fuel and oil tanks, isolation transformers, mud tanks and pumps, sewage system, compressed air, hydraulic deck crane, living quarters, and alarm system. Rig 21 lost all ballast capabilities and could no longer float without assistance received during the recovery effort. Captain Guy Plaisance, an accredited marine surveyor, stated in his affidavit:

> As a direct result of the fire of June 11, 2005, Rig 21 was rendered completely incapable of navigation . . . of transporting its crew . . . of moving any property . . . of drilling for oil and gas. . . . Rig 21 was rendered unseaworthy, unsuitable for its designed, built and intended purpose and unable to withstand conditions usually met in the service for which it was intended.

The Collector puts much emphasis on the fact that the vessel could indeed float because it was towed to the Jefferson Parish shipyard. However, expert testimony explained that "prior to the fire, it had ballast capabilities of putting certain waters or transferring fluids within the compartments; and it could not do

that on its own again." The Collector relies on its own interpretation of 203 photographs introduced into evidence to suggest the damage claimed by Coastal Drilling was "exaggerated." Further, it offers the conclusory statement that "with emergency power the well was plugged, the derrick was lowered, and the barge was towed to a shipyard for repairs that cost . . . less than half of the rig's original price." The Collector admits that it did not inspect the vessel prior to or after the fire. No record evidence suggests the auditor was given any specific instructions to determine whether the work done qualified as a "repair" or "reconstruction."

Accordingly, there was no evidence to refute the extent of the damage claimed and substantiated by Coastal Drilling. Rather, the Collector relied upon the notion that any work performed that was not original construction must be a repair. Without addressing this circular argument again, we find no genuine issue of material fact remains as to whether the work done to render Rig 21 seaworthy again after its destruction by fire meets the definition of "reconstruction" pursuant to LAC 61:I:4403(B)(2). We performed a careful deconstruction of the term's definition and thoroughly reviewed the record to determine the term's applicability to the facts at issue. We conclude the materials, equipment, and machinery which entered into and became component parts of Rig 21 after its reconstruction following the fire fit squarely within the statutory exemption of La. R.S. 47:305.1, as defined by the constitutionally valid regulation of LAC 61:I:4403(A) and (B)(2).

To the extent the Collector asserts we are bound by the jurisprudence that holds the statutory exemption is limited to "newly-built vessels," we disagree with the proposition for which the Collector claims those cases stand. Namely, the Collector relies on *Central Marine Service, Inc.*, *supra* and the subsequent cases that cite it: *Canal Barge Co., Inc., supra.*; *Compass Offshore, Inc.*, *supra*; and *R & B Falcon Drilling USA, Inc., supra.* However, *Central Marine,* a case that pre-dates the regulation at issue, simply posed the question of whether repairs and

replacement parts were exempt. This court answered the question in the negative and specifically did not address whether the "major refurbishing of an older vessel or hull" is exempt, noting, nonetheless, that such a position is "a reasonable one." *Central Marine*, 507 So.2d at 210, n.8. *Canal Barge* and *Compass Offshore* similarly involved repairs and not reconstruction. In the final case, *R & B Falcon Drilling,* the court recognized the regulation but found it did not apply because the required triggering event of sinking, collision, or fire was not present. Accordingly, we find the facts of the instant case are distinguishable from those argued as supporting case law by the Collector. Moreover, had the instant analysis been applied in those cases, the same results would have been reached.

## CONCLUSION

We reverse the decree of unconstitutionality of LAC 61:I:4403(A) and (B)(2) and render summary judgment in favor of Coastal Drilling. Accordingly, we order the refund of all taxes paid under protest, along with interest as allowed by law.

**REVERSED AND RENDERED.**

SUPREME COURT OF LOUISIANA

NO. 2015-C-1793

COASTAL DRILLING COMPANY, L.L.C.

VERSUS

BARRY J. DUFRENE, IN HIS CAPACITY AS DIRECTOR OF
ST. MARY PARISH SALES AND USE TAX DEPARTMENT AND
EX-OFFICIO TAX COLLECTOR FOR ST. MARY PARISH

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF ST. MARY

**KNOLL, J., dissents.**

With all due respect, I dissent from the majority opinion, finding its holding a gross departure by this Court from our jurisprudence as well as from the tax exemption law at issue. The First Circuit Court of Appeal opinion authored by Judge Guidry correctly **interpreted** the tax law at issue, and there is very little this dissent can add except to echo the Court of Appeal opinion with more emphasis on the critical points the majority opinion fails to recognize.

Significantly, the majority opinion fails to apply any analysis to its conclusions and makes quantum leaps in reversing the well-considered opinions of the lower courts. The majority opinion's centerpiece is the "intent" of the Legislature. While I recognize the intent of the Legislature is an important factor in considering the interpretation of a statute, our function of interpreting legislative intent cannot equate to legislating from the bench. Tax exemptions belong exclusively to the legislative branch of government—not to the judiciary, even under the guise of interpreting the "intent" of the Legislature.

The majority opinion fails to mention that <u>tax exemptions are interpreted against the taxpayer and in favor of the State</u>.[1] The application of this doctrine is

---

[1] Nowhere does the majority acknowledge and analyze this important doctrine.

crucial and fatal to the plaintiff's argument. The majority opinion interprets the exemption just the opposite. In my view this is an aberration of statutory interpretation.

The issue of LAC 61.I:4403's constitutionality must be examined in light of the well-established rule of statutory construction that tax exemptions are "strictly construed in favor of the State and 'must be clearly and unequivocally and affirmatively established by the taxpayer.'"[2] Here, the exemption at issue provides:

> The tax imposed by taxing authorities shall not apply to sales of materials, equipment and machinery which enter into and become component parts of ships, vessels, or barges, including commercial fishing vessels, drilling ships, or drilling barges, of fifty tons load displacement and over, **built in Louisiana** nor to the gross proceeds from the sale of such ships, vessels, or barges when sold by the builder thereof.

La. R.S. § 47:305.1(A) (emphasis added).

Having examined the Legislative history and relevant jurisprudence, I find nothing which evidences intent on the part of the Legislature to encompass vessel reconstruction within the term "built in Louisiana." Rather, I find the Department of Revenue's expansion of this exemption to include reconstruction goes beyond mere clarification of the statute, exceeds the executive branch's authority, and impinges upon the Legislature's lawmaking function. As Judge Guidry, writing for the First Circuit, correctly noted:

> The legislature could have expanded the exemption to vessels that were rebuilt or reconstructed, but instead, it expressly limited the exemption to vessels that are built or constructed. Moreover, it is not constitutionally permissible for the Louisiana Department of Revenue, as a part of the executive branch of government to administratively expand a statutory exemption nor for the courts, as part of the judicial branch, to interpret the exemption in such a way as to judicially legislate expansion of the exemption beyond that expressly and clearly conferred in plain terms by the legislature.

*Coastal Drilling Co., L.L.C. v. Dufrene,* 2014-0960 (La.App. 1 Cir. 6/5/15), 174

---

[2] *Harrah's Bossier City Investment Co., LLC v. Bridges,* 2009-1916 (La. 5/11/10), 41 So.3d 438, 446, *quoting Vulcan Foundry, Inc. v. McNamara,* 414 So.2d 1193, 1197 (La. 1982); *see also, Showboat Star Partnership v. Slaughter,* 00-1227 (La. 4/3/01), 789 So.2d 554; *McNamara v. Central Marine Service, Inc.,* 87-0030 (La. 5/18/87), 507 So.2d 207.

2

So.3d 673, 678.

Although the Department of Revenue has authority to promulgate regulations to clarify the application of tax exemptions, this authority does not extend to broadening the scope of tax exemptions. The power to tax is vested in the Legislature and may not be surrendered except as provided in the Louisiana Constitution. La. Const. Art. 7 § 1(A). The Louisiana Constitution expressly states "[e]xcept as otherwise provided by this constitution, no one of these branches [legislative, executive, or judicial], nor any person holding office in one of them, shall exercise power belonging to either of the others," and the Constitution makes no allowance for the executive branch to expand tax exemptions created by the Legislature. La Const. Art. 2 § 3. The plaintiff correctly notes Louisiana may be at a competitive disadvantage due to neighboring states' inclusion of vessel repairs in their sales tax exemption statutes;[3] however, it is not the purview of the executive or judicial branches to correct any such competitive disadvantage. Rather, it is the Legislature's function to weigh such policy considerations and to add more expansive language to the exemption if it so chooses.

The majority relies on *Traigle v. PPG Industries Inc.,* 332 So.2d 777, 782 (La. 1976) in support of giving "substantial and often decisive weight" to the administrative construction in the present case, noting the regulation at issue has been in existence since 1987. However, the full quotation of the Court in *Traigle* states "**where the statute is ambiguous (as, most favorably to the taxpayer, this statutory definition may be)** a long settled contemporaneous construction by those charged with administering the statute is given substantial and often decisive weight in its interpretation." *Id* (emphasis added). This principle of law does not

---

[3] For example, the Texas and Mississippi statutes cited by the plaintiff **explicitly** exempt materials purchased for vessel repair from taxation. Tex. Tax Code § 151.329 (exemptions include "materials and labor used in repairing, renovating, or converting a ship or vessel that is of eight or more tons displacement…"); Miss. Code Ann. § 27-65-101 (tax does not apply to "[s]ales of raw materials…to a manufacturer for use directly in manufacturing or processing a product for sale or rental or repairing or reconditioning vessels or barges of fifty (50) tons load displacement and over").

3

apply to the current case for two reasons. First, La. R.S. § 47:305.1(A)'s use of the term "built in Louisiana" is **not ambiguous**; instead it is a plain language reference to construction, not reconstruction, of vessels. Second, because the statutory provision at issue is an exemption which must be strictly construed in favor of the State, the phrase "built in Louisiana" may not be applied "**most favorably to the taxpayer**." Thus, deference to administrative construction is not necessary or appropriate in this case.

Furthermore, the *Traigle* court also acknowledged that "an administrative construction cannot have weight where it is contrary to or inconsistent with the statute." *Traigle,* 332 So.2d at 782. Notwithstanding the undisputed legislative purpose of attracting and keeping large shipbuilding projects in Louisiana, the Legislature has chosen to limit the application of this exemption to only those vessels "built in Louisiana," without any reference to vessels reconstructions, major overhauls, restoration of seaworthiness, or any other activity which falls short of constructing a new vessel. Therefore, I find LAC 61.I:4403's expansion of the exemption to include vessel reconstruction to be both inconsistent with the statute and impermissible in light of the rule requiring strict construction of exemptions in favor of the State. Such an expansion requires positive law and cannot be accomplished through administrative interpretation.

Clearly, LAC 61.I:4403 violates separation of powers and was correctly deemed unconstitutional by the lower courts. As the plaintiff has failed to carry its heaving burden of showing the strictly-construed statutory tax exemption is applicable in this case, I find the lower courts correctly found in favor of the tax collector, and I would affirm their judgments.

03/15/16

# SUPREME COURT OF LOUISIANA

## NO. 2015-C-1793

## COASTAL DRILLING COMPANY

## VERSUS

## BARRY J. DUFRENE, IN HIS CAPACITY AS DIRECTOR OF ST. MARY PARISH SALES AND USE TAX DEPARTMENT AND EX-OFFICIO TAX COLLECTOR FOR ST. MARY PARISH

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST CIRCUIT, PARISH OF ST. MARY*

**WEIMER, J.**, additionally concurring.

Coastal Louisiana, with its myriad waterways, has a history of being a national leader in shipbuilding. Louisiana shipyards have produced vessels that ply waters worldwide. In an effort to aide the competitive vitality of this industry, the Louisiana Legislature enacted a statute to encourage these mobile vessels to be "built in Louisiana." See La. R.S. 47:305.1(A). Although the arguments of the parties focused on the meaning of the word "built," of equal importance is the fact that this economically significant and massive project was completed "in Louisiana." I agree with the opinion that the regulation is fully compliant with the letter and spirit of this legislation and is, thus, constitutional.

SUPREME COURT OF LOUISIANA

NO. 2015-C-1793

COASTAL DRILLING COMPANY, L.L.C.

VERSUS

BARRY J. DUFRENE, IN HIS CAPACITY AS DIRECTOR OF
ST. MARY PARISH SALES AND USE TAX DEPARTMENT AND
EX-OFFICIO TAX COLLECTOR FOR ST. MARY PARISH

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF ST. MARY

Hughes, J., dissenting.

"Built" does not mean rebuilt or reconstruction. Damage is not "destruction." The effect of the regulation exceeds the statute. Therefore I respectfully dissent.